United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT MACHINSKI,<br><br>　　　　Defendant. | Case No. 11-cv-01118-LB<br><br>**ORDER REGARDING THE DEFENDANT'S SUPPLEMENTAL SUMMARY-JUDGMENT BRIEFING & MOTION TO STRIKE**<br><br>Re: ECF Nos. 101 & 113 |

## INTRODUCTION & BACKGROUND

This is a student-loan default case. The court already granted the government's summary-judgment motion, and incorporates by reference here the facts and analysis in the order at ECF No. 90.[1] Although the court granted that motion, it deferred entering judgment and asked the government to consider a new settlement offer.[2] The government declined to do so.[3]

Separately, also post-summary judgment, Mr. Machinski moved for reconsideration based on (1) a discrepancy between his loan consolidation application and the total loans disbursed, and (2) outstanding discovery that the government had not responded to.[4] The court set forth a process to

---

[1] Summary-Judgment Order – ECF No. 90. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See id.* at 11–12.

[3] *See* Statement – ECF No. 99.

[4] *See* Motion for Leave to File a Motion for Reconsideration – ECF No. 95.

ORDER – No. 11-cv-01118-LB

address those issues and to give Mr. Machinski an opportunity to supplement the record before judgment is entered.[5]

Mr. Machinski filed a supplemental brief and declaration in opposition to the government's summary-judgment motion, and the government responded.[6] Mr. Machinski also moved to strike the government's statement regarding its settlement offer under Federal Rule of Civil Procedure 12(f).[7]

Mr. Machinski's supplemental briefing does not alter the court's summary-judgment analysis. His arguments, which are largely evidentiary objections, do not rebut the government's prima facie case. The court's summary-judgment order stands. Mr. Machinski's motion to strike also fails.

**ANALYSIS**

The court addresses Mr. Machinski's supplemental briefing and motion to strike in turn: first, the court overrules his objections to the government's evidence and the sufficiency thereof; second, it denies his motion to strike.

**1. Objection #1 — Application and Disbursement Discrepancy**

Mr. Machinski reasserts his objection to the loan-value discrepancy between the consolidation application ($21,200) and the actual amount disbursed ($21,706.09).[8] He takes issue with the government's explanations for the discrepancy — the government originally said the difference was caused by interest accrued between the application and disbursement dates, but now says the application sum was only an estimate — and the government's supporting evidence.

The government submits the declaration of Philippe Guillon, a Senior Loan Analyst at the Department of Education, and custodian of records kept by the Department relating to student

---

[5] Order – ECF No. 102.

[6] Defendant's Supp. Brief – ECF No. 113; Government's Response – ECF No. 118.

[7] Motion to Strike – ECF No. 101.

[8] Defendant's Supp. Brief at 3–4.

ORDER – No. 11-cv-01118-LB        2

United States District Court
Northern District of California

loans.[9] Mr. Guillon has "access to the Department's Debt Management and Collections System," a database that contains "records of payment transactions, collection actions, and telephonic and written contacts between borrowers and the Department."[10] He is familiar with the circumstances of Mr. Machinski's loan and explains the application–disbursement discrepancy.[11]

The consolidation application and promissory note reflects a $21,200 loan balance consisting of six separate loans: $4,800, $4,300, $1,500, $4,800, $1,400, $4,400.[12] Mr. Guillon explains that Mr. Machinski (as the borrower) filled out those sums "as an estimate of the amounts owed on each loan to be consolidated."[13] He points out that each loan to be consolidated was rounded to $100, and that "this would not be the case if the 'actual' balances were ascertained" because "in most cases there would be numerical dollar and cents amounts."[14] Mr. Guillon goes on to explain that the application information "is used to locate each prior loan and to give the lender and the borrower awareness of the approximate amounts sought for consolidation."[15] Then, "[o]nce the payoff on each loan is determined, a Disclosure Statement and Repayment Schedule is mailed to the borrower showing the exact amount to be paid to each respective underlying servicer."[16]

Mr. Guillon attaches a copy of that Disclosure Statement and Repayment Schedule, which reflects a total consolidated balance of $21,706.09 (the same as reflected in the Certificate of Indebtedness[17]), consisting of six loans in dollars-and-cents amounts: $4,725.55, $4,401.48, $1,598.04, $4,871.27, $1,467.82, $4,641.93.[18]

---

[9] Guillon Decl. – ECF No. 103, ¶¶ 1–2.

[10] *Id.* ¶ 2.

[11] *Id.* ¶¶ 3–6.

[12] Application and Promissory Note – ECF No. 81; Guillon Decl. – ECF No. 103, ¶ 4.

[13] Guillon Decl. – ECF No. 103, ¶ 4.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶ 5.

[17] *See* Certificate of Indebtedness – ECF No. 67-1 at 3.

[18] Disclosure Statement – ECF No. 103-1.

Mr. Machinski takes issue with Mr. Guillon's explanation for three reasons: (1) Mr. Guillon did not "produce any calculation or loan statements on how the disbursement amounts identified on the Disclosure Statement were actually derived"; (2) he did not "offer any explanation as to what interest rates were applied"; and (3) his explanation "is nothing more than speculation and should be given no weight."[19]

The court disagrees. First, Mr. Guillion explained how the Disclosure Statement amounts were derived: those amounts represent the dollars-and-cents values of Mr. Machinski's loans that were paid off by Nellie Mae (the consolidating lender).[20] The application and promissory note specifically contemplates — just above Mr. Machinski's signature — that the consolidated loan amount would be determined by the amount paid off and confirmed in a disclosure statement. That document reads:

> I further authorize Nellie Mae to issue the proceeds of my consolidation loan to each holder listed in the "Student Loan Information" section of this application. I understand that the amount of my consolidation loan will be the sum of the balances of my outstanding eligible loans which I have chosen to consolidate. My outstanding balance on each loan to be consolidated will include unpaid principal, accrued unpaid interest and late charges, as certified by each holder. . . .
>
> I understand that if I am eligible for a consolidation loan I will receive a Repayment Schedule and Disclosure that identifies my loan amount (as determined by Nellie Mae), interest rate, due dates, payment amounts and late charges.[21]

Mr. Machinski does not provide any evidence showing that the consolidated loan disbursement was inaccurate.

Second, the court cannot see how Mr. Machinski's interest-rate-based argument is relevant here. It may be that it is in response to the government's past argument — articulated at the summary-judgment hearing — that the application and disbursement discrepancy was a result of accumulated interest. If so, that issue is moot in light of Mr. Guillon's declaration.

---

[19] Defendant's Supp. Brief at 4.

[20] Guillon Decl. – ECF No. 103, ¶¶ 4–5.

[21] Application and Promissory Note – ECF No. 81.

ORDER – No. 11-cv-01118-LB        4

Third, Mr. Guillon's declaration is not mere speculation, as Mr. Machinski asserts. Mr. Guillon, a Senior Loan Analyst, record custodian, and person familiar with Mr. Machinski's loan account records has adequately demonstrated the knowledge necessary to offer this explanation.

The court overrules Mr. Machinski's objections based on the discrepancy between the application and the actual amount disbursed.

**2. Objection #2 — Disclosure Statement Authentication**

Mr. Machinski's second objection is that the Disclosure Statement and Repayment Schedule has not been properly authenticated.[22] He appears to argue that the Disclosure Statement cannot be authenticated because it is not signed by a Nellie Mae representative, that he has a right to confront whoever prepared the document, and that the government refused to produce the perparer's name.[23]

A party submitting an item of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This may be done by the testimony of a witness with knowledge of the item, testifying "that an item is what it is claimed to be." *Id.* 901(b)(1). An item may also be authenticated based on "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* 901(b)(4).

Here, Mr. Guillon declares that he is a Senior Loan Analyst for the Department of Education, is the custodian of the Department's student-loan records, is "familiar with the circumstances of [Mr. Machinski's] loan[,] and [has] personal knowledge of the records pertaining to [it]."[24] He states that the Disclosure Statement attached to his declaration is a "true and correct copy."[25] This declaration, plus the circumstances of the Disclosure Statement — including (1) the general (though not precise) consistency in the number and amount of the loans, and (2) the same name,

---

[22] Defendant's Supp. Brief at 5.

[23] *Id.*

[24] Guillon Decl. – ECF No. 103, ¶¶ 1–3.

[25] *Id.* ¶ 5.

ORDER – No. 11-cv-01118-LB 5

address, and social security number appearing on the application and Disclosure Statement[26] — is sufficient to show that the Statement is what the government claims it is.

The court overrules Mr. Machinski's authentication objection.

### 3. Objection #3 — Legibility of Promissory Note

Mr. Machinski challenges the promissory note as illegible.[27] The court denied this argument in its summary-judgment order and said:

> Indeed, the originally filed duplicate is difficult to read — the court cannot make out the amount disbursed or the interest rate. But the government provided the court and Mr. Machinski with a legible copy at the November 3 case-management conference, which was also filed electronically. And, importantly, Mr. Machinski does not deny that promissory note relates to his student loan. He does not deny that it is his signature on the note, and he maintains only that the name on the top has the wrong middle initial. The government named Mr. Machinski in this case as "Robert P. Machinski aka Robert F. Machinski"; he never objected until now. Moreover, the offending initial easily could be an "F."[28]

Mr. Machinski's supplemental argument is substantially the same, but now he argues, "[s]pecifically, [that] the terms of the interest and transfer clauses are illegible."[29] Those two provisions appear on the back of the application and promissory note.[30] The court agrees that the image quality is not ideal — there is a stamp overlapping these two provisions.[31] But, notwithstanding a few illegible words, the material terms of those provisions are clear, and the court reproduces them below:

> **Interest**: (1) I agree to pay simple interest on the [unreadable] principal from the date of loan disbursement until the entire principal sum and accrued interest are paid in [unreadable] . . . . responsible for the payment of all the interest that accrues on this loan in accordance with the terms of the repayment schedule. (3) This consolidation loan note shall bear interest at an annual rate on the unpaid principal balance of the loan which is equal to the weighted [unreadable] interest rates on the loans consolidated, rounded to the nearest whole percent except that such interest rate shall not be less than 9 percent.

---

[26] *See* Disclosure Statement – ECF No. 103-1; Application and Promissory Note – ECF No. 81.

[27] Defendant's Supp. Brief at 5–6.

[28] Summary-Judgment Order – ECF No. 90.

[29] Defendant's Supp. Brief at 5–6.

[30] *See* ECF No. 84 at 1.

[31] *Id.*

> **Transfer of Note**: If Nellie Mae sells the loan or otherwise transfers the right to receive payment, I will be sent a clear notification which spells out my obligations to the party to whom the loan was sold. I will have the same rights and responsibilities with the subsequent holder that I have with regard to the lender. This not is not intended to be a negotiable instrument under the Uniform Commercial Code as adopted by any state, and a subsequent holder of this Note cannot be a holder in due course.[32]

These provisions are not a model of legibility, but their meaning is clear: the consolidated loan would bear an interest of at least 9% (which it did[33]) and Mr. Machinski would be obligated to any subsequent purchaser of the loan.

There is no material dispute regarding these terms. The court denies Mr. Machinski's argument.

### 4. Objection #4 — Proof of Payment

Mr. Machinski next argues that the government "has not provided any documentation indicating [his] prior payments" and, as such, "it is unclear whether the amount that [the government] alleges is the correct amount."[34]

Mr. Machinski confuses the burden of proof. As described in the court's summary-judgment order, the government has the burden of establishing (1) the existence of the promissory note, (2) Mr. Machinski's default, and (3) the amount due.[35] *United States v. Freeman*, No. C 01-1859 SI, 2002 WL 467688, at *1 (N.D. Cal. Mar. 25, 2002) (citing *United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975); *see also United States v. Gray*, No. C-11-02988 SLM (JCS), 2012 WL 1657112, at *4 (N.D. Cal. May 10, 2012). "The burden [then] shifts to [Mr. Machinski] to prove that the amount due is not owing." *United States v. Chu*, No. 00-3450 BZ, 2001 WL 1382156, at *1 (N.D. Cal. Oct. 31, 2001) (quoting *United States v. Glaude*, No. C-99-0182-VRW, 1999 WL 1080680, at *1 (N.D. Cal. Nov. 12, 1999)) (alteration in original).

---

[32] ECF No. 84 at 1.

[33] *See* Certificate of Indebtedness – ECF No. 67-1 at 3; Disclosure Statement – ECF No. 103-1.

[34] Defendant's Supp. Brief at 6.

[35] Summary-Judgment Order at 7–8.

The government satisfied its burden (as described in the court's prior order) through the signed consolidation application and promissory note, the Certificate of Indebtedness, and (now) the Disclosure Statement.[36] The government even produced an accounting of Mr. Machinski's debt payments, which included $2,156.83 credited against his account between May 1993 and August 1994, and a credit of $16,123.87 in treasury offsets.[37] (The accounting was "given final approval by the US Department [of] Education."[38])

The burden then shifted to Mr. Machinski to prove that the amount due is wrong. The court explained to Mr. Machinski that he cannot simply assert that the government's "'claim for damages exceed what, if anything, it would have been entitled to receive by the amounts already paid to [it] through offsets and other payments [he] ha[s] already made.'"[39] But he has not produced evidence rebutting the government's case; it is not enough to speculate that payments may not have been taken into account.[40] *See Irby*, 517 F.2d at 1043 (reversing district court's holding that it was the government's duty to "prove all credits given to defendants; that the [g]overnment had the 'duty to prove how they arrived at the credits they have given them on it,'" and holding that the government established its prima facie case through "introduction of the note, the guaranty, and the sworn transcript of account").

The court denies the argument.

### 5. Objection #5 — Treasury Offsets

Mr. Machinski's next argument is similar: he argues that the government improperly credited $16,123.87 in treasury offsets to interest only, and not principal.[41]

---

[36] *Id.* at 8.

[37] Loan Accounting – ECF No. 48 at 2; Certificate of Indebtedness – ECF No. 67-1 at 3.

[38] Loan Accounting at 2.

[39] Summary-Judgment Order at 9 (quoting Machinski Decl. – ECF No. 72, ¶ 11).

[40] *See* Defendant's Supp. Brief at 6.

[41] *Id.* at 6–7.

ORDER – No. 11-cv-01118-LB　　　　8

1          Mr. Guillon declares that the treasury offsets were credited to Mr. Machinski's debt under 34

2    C.F.R. § 682.209(b).[42] That section, called "Payment application and prepayment," says that

3    "[e]xcept in the case of payments made under an income-based repayment plan, the lender may

4    credit the entire payment amount first to any late charges accrued or collection costs and then to

5    any outstanding interest and then to outstanding principal." 34 C.F.R. § 682.209(b)(1). Mr.

6    Machinski cites no authority that this was improper. The court denies the argument.

### 6. Objection #6 — Hearsay and Personal Knowledge

Mr. Machinski's final objection goes generally to Mr. Guillon's declarations and interrogatory responses.[43] He argues that Mr. Guillon's declarations (and interrogatory responses) contain hearsay statements that do not fall under the business-records exception because the records he relies on were not made by the Department of Education, but by third-party lender Nellie Mae.[44] Thus, he urges, the government has not satisfied its prima facie burden because "[t]he actual existence of original promissory notes has not been established."[45]

First, as the court noted in its summary-judgment order, the Certificate of Indebtedness is admissible as a public record.[46] *See United States v. Badgett*, No. CV 15-02350-BRO (JPRx), 2016 WL 5886916, at *2 (C.D. Cal. Feb. 3, 2016) (stating that "Certificates of Indebtedness fall within the public records exception to hearsay"); *United States v. Ragan*, No. CV 10-7654 (MANx), 2011 WL 5075544, at *2 (C.D. Cal. Oct. 25, 2011) (same), *reversed on other grounds by United States v. Ragan*, 546 F. App'x 657 (9th Cir. 2013).

Second, the promissory note and Disbursement Statement are admissible as business records. "A record of an act, event, condition, opinion, or diagnosis" is admissible as a business record if:

---

[42] Guillon Decl. – ECF No. 67, ¶ 7.

[43] Defendant's Supp. Brief at 7–15.

[44] *See id.*

[45] *Id.* at 13.

[46] *See* Summary-Judgment Order at 7.

ORDER – No. 11-cv-01118-LB          9

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (1) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Generally, "[t]he person presenting the foundation for a business record must be testifying as to the procedures of the appropriate business," and so "a person receiving a document from an unaffiliated business could not solely by virtue thereof lay a sufficient foundation for the record as a business record of the issuing business." Wright & Miller, 30C Fed. Prac. & Proc. Evid. § 7047 (2017 ed.). But "records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records." *MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) (citing *United States v. Childs*, 5 F.3d 1328, 1333–34, 1334 n.3 (9th Cir.1993)); *see also Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342–44 (Fed. Cir. 1999); *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990). Under Rule 803(6), then, at least one district court has admitted Department of Education records even though they were "based on or include[d] the records of the lender or guarantor." *See United States v. Giles*, No. 14-cv-978, 2017 WL 564012, at *3 (E.D. Wis. Feb. 10, 2017).

Here, Mr. Guillon's declaration satisfies Rule 803(6) to introduce both the promissory note and the Disclosure Statement. He declares that he has access to the Department's Debt Management and Collections System, "a computer database that contains pertinent information on all defaulted student loan accounts held by the Department."[47] The database contains records "of

---

[47] Guillon Decl. – ECF No. 67, ¶ 2; Guillon Decl. – ECF No. 103, ¶ 2.

ORDER – No. 11-cv-01118-LB        10

payment transactions, collection actions, and telephonic and written contacts between borrowers and the Department, Department staff[,] or the staff of the Department's contractors."[48] The records are "created pursuant to Department procedures by Department staff and by staff of contractors retained by the Department to collect these loans, in the regular course of their duties at the time of the transaction or event recorded."[49] They are made "at the or near the time of the transaction recorded, by or from information transmitted by a person with knowledge of the transaction, and are kept in the course of the Department's regularly conducted business" of administering the loan programs, "pursuant to the Department's regular practice of making and keeping such records."[50] Mr. Guillon declares that he has personal knowledge of such records pertaining to Mr. Machinski's loans,[51] and declares that the promissory note and Disclosure Statement attached to his declarations are true and correct copies of those documents.[52]

This is sufficient even though Department of Education staff did not create the records. The Department keeps student-loan documents — and relies on them — in the regular course of its business. Indeed, "federal regulations require [the Department] to obtain lender and guarantor records and maintain them for FFELP loans assigned to [the Department] unless the Secretary . . . says otherwise." *Giles*, 2017 WL 564012 at *3 (citing 34 C.F.R. § 682.409); *see* 34 C.F.R. § 682.409(c)(4) (requiring the guaranty agency to submit, among other things, the promissory note, a written assignment, the loan application, payment and collection histories, and disbursement records). And, because the Department must collect on the assigned student loans, it clearly has a substantial interest in those records' accuracy.

Mr. Machinski does not show that the documents (or their preparation) are untrustworthy. To the extent he tries to do so by arguing that the middle initial on the promissory note could be a "P"

---

[48] Guillon Decl. – ECF No. 67, ¶ 2; Guillon Decl. – ECF No. 103, ¶ 2.
[49] Guillon Decl. – ECF No. 67, ¶ 2; Guillon Decl. – ECF No. 103, ¶ 2.
[50] Guillon Decl. – ECF No. 67, ¶ 2; Guillon Decl. – ECF No. 103, ¶ 2.
[51] Guillon Decl. – ECF No. 67, ¶ 2; Guillon Decl. – ECF No. 103, ¶ 3.
[52] Guillon Decl. – ECF No. 67, ¶ 4, Ex. 2; *see also* ECF Nos. 81, 83–84; Guillon Decl. – ECF No. 103, ¶ 5, Ex. 1.

ORDER – No. 11-cv-01118-LB     11

instead of his initial, "F," the court denies that argument for a second time.[53] As the court noted before, the initial could easily be an "F," and Mr. Machinski does not deny that the promissory note relates to his student loan or that the signature on it is his.[54]

The court also denies Mr. Machinski's argument that there are gaps in the chain of assignment which, according to him, renders the business-records exception inapplicable because the "record keeping reliability has not been established by personal knowledge of someone familiar with the practices of each entity at each point in the chain."[55] Mr. Guillon's declaration adequately establishes the records' trustworthiness under 803(6). *See Duncan*, 919 F.2d at 986–87 (explaining that the "primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced" and that "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy") (internal quotation marks omitted).

And the court denies Mr. Machinski's argument that Mr. Guillon could not lay a foundation under Rule 803(6) because "[a]ll of the key events making out [the government's] breach of contract claim occurred **prior** to Mr. Guillon's and his employer's involvement or generation of any records."[56] *See Giles*, 2017 WL 564012 at *3–*4 (denying a similar argument where the Department's senior loan analysis "ha[d] personal knowledge to support his declaration based on his familiarity with [Department] records, he ha[d] provided sufficient indicia of their reliability, and [the defendant] ha[d] done nothing to suggest that any of the records at issue [were] inaccurate or unreliable").

\*     \*     \*

In sum, the court overrules Mr. Machinski's supplemental objections to the government's evidence. His arguments do not rebut the government's prima face case.

---

[53] *See* Defendant's Supp. Brief at 13; Summary-Judgment Order at 6, 9.

[54] *See* Summary-Judgment Order at 6.

[55] Defendant's Supp. Brief at 13, 15.

[56] *Id.* at 14 (emphasis in original).

### 7. Motion to Strike

After granting the government's motion for summary judgment but before entering judgment, the court asked the government to reconsider its settlement posture.[57] It did, and it submitted a statement of compliance with the court's order.[58] But in its statement the government explained that it would not offer a more favorable settlement.[59] Mr. Machinski objects to the government's reasoning for that decision and moves to strike the document under Federal Rule of Civil Procedure 12(f).[60]

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). Striking is appropriate if it "will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011). Motions to strike "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). The ultimate decision under Rule 12(f) lies within the sound discretion of the court. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 534–35 (1994).

Here, Mr. Machinski moves to strike the government's statement of compliance with the court's summary-judgment order. The court denies the motion for at least three reasons. First, "[u]nder the express language of the rule, only pleadings are subject to motions to strike," *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983), and the government's statement of compliance is not a pleading. Second, striking the statement will not serve Rule 12(f)'s purpose of efficient, non-prejudicial resolution: the government's statement is irrelevant to the court's

---

[57] *See* Summary-Judgment Order at 11–12.

[58] Statement – ECF No. 99.

[59] *Id.*

[60] Motion to Strike – ECF No. 101.

ORDER – No. 11-cv-01118-LB    13

summary-judgment determination. Third, Mr. Machinski does not adequately identify the allegedly offensive content in the statement. The court understands that Mr. Machinski "chooses not to publically rebroadcast within [his] motion the offensive, immaterial, impertinent, derogatory, defamatory, scandalous[,] and libelous content" in the statement.[61] But much of the statement contains facts (or allegations) already in the case record, and so much of it is unlikely to be objectionable at this stage.

It appears that Mr. Machinski wants to remove (or redact) certain parts of the government's statement. This is not the proper way to do it (if it is proper at all). The court denies Mr. Machinski's motion to strike under Rule 12(f).

## CONCLUSION

The court overrules Mr. Machinski's supplemental objections and arguments in opposition to the government's prima face case. The court also denies his motion to strike. Because the court previously granted the government's summary-judgment motion, it will enter a separate judgment as of November 3, 2016, as previously agreed to by the government (and as detailed in the government's proposed form of judgment).[62]

**IT IS SO ORDERED.**

Dated: June 16, 2017

LAUREL BEELER
United States Magistrate Judge

---

[61] *Id.* at 2.

[62] *See* Summary-Judgment Order at 11–12; Form of Judgment – ECF No. 100.

ORDER – No. 11-cv-01118-LB        14